IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CORINA T. ALLEN,               §
                               §
        Plaintiff,             §
                               §
                               §
v.                             §        CIVIL ACTION NO. H-09-4088
                               §
                               §
RADIO ONE OF TEXAS II, LLC,    §
                               §
        Defendant.             §

MEMORANDUM AND ORDER

Pending are: Defendant Radio One of Texas II, LLC's Motion for Summary Judgment (Document No. 75) and Affirmative Motion for Partial Summary Judgment on its Counterclaim for Breach of Contract (Document No. 77); and Plaintiff Corina T. Allen's Motion for Summary Judgment Regarding Defendant's Counterclaim (Document No. 79). After careful consideration of the motions, responses, replies, and the applicable law, the Court concludes as follows.

I. Background

Plaintiff Corina T. Allen ("Allen") sues under Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act ("TCHRA"), alleging that Defendant Radio One of Texas II, LLC ("Radio One") engaged in unlawful employment discrimination on the basis of sex and retaliated against her for engaging in

conduct protected by Title VII and the Texas Labor Code.  Radio One filed a counterclaim alleging that Allen breached her contract by retaining Radio One's confidential information in violation of her employment agreement.[1]

Allen was a General Sales Manager for KBXX, a radio station owned by Radio One in Houston, Texas.[2]  She held that job for five years before her termination on December 6, 2007.[3]  Plaintiff asserts that she had an exemplary record at Radio One, having been nominated twice for the American Women in Radio and Television's Sales Manager of the Year Award.[4]

Allen contends that her problems and eventual termination from Radio One stem from the actions of Doug Abernethy, her supervisor from late 2004 until her termination, whom Allen alleges displayed a "decided preference for male employees over female employees."[5] Allen alleges that Abernethy dismissed four females between 2005

---

[1] Document No. 30.

[2] Document No. 11 at 2.

[3] Id.

[4] Id.

[5] Id.

and 2007 from management positions.[6]  After Allen was terminated, she was replaced by a male, Bob MacKay.[7]

On July 17, 2007, Abernethy reported by email to Gloria Celestin ("Celestin"), Radio One's Employee Relations Manager, that he had met with some of Allen's subordinates and other employees with whom she interacts, and heard complaints about her attitude toward and treatment of others.  Celestin directed him to draft a counseling memorandum warning Allen that mistreatment of coworkers would not be tolerated.[8]  Abernethy then called Allen into his office to discuss the complaints.[9]  Abernethy recounted to Allen that several employees had complained, stating that she "'spoke down' to them, treated them unfairly and negatively, and had created poor morale at the station."[10]  Allen understood that she was being counseled by Abernethy about her treatment of the staff and its effect on staff morale, and also a performance issue on KBXX's relative position to other stations in the marketplace, and

---

[6] For example, Brenda Ford, the National Sales Manager who hired Allen, was fired by Abernethy and replaced by Bob MacKay. *See* Document No. 93 at 10; *see also* Document No. 93, ex. 1 ¶ 12 (Allen Decl.); Document No. 93, Ex. 8 at 228:19-229:3 (Rideaux Depo.).

[7] *See* Document No. 93 at 10; Document No. 93, ex. 1 ¶ 12.

[8] *See* Document No. 93, ex. 3 at 79:14-17 (Celestin Depo.).

[9] Id.

[10] Document No. 75 at 3.

3

understood that she was expected to improve.[11]  Abernethy then presented Allen with a "Counseling Memorandum" which he had prepared.[12]  Allen signed the memorandum the next day, acknowledging that she had been warned about her mistreatment of subordinates and about her sales performance.[13]  In the "employee comment" section, Allen requested weekly meetings to talk about her sales data but did not contest the complaints about her lack of civility in the office.[14]

On November 15, and again on November 26, 2007, Abernethy relayed to Celestin that he had heard more complaints about Allen.[15] At this point, Celestin conducted an investigation, and interviewed several women who were Allen's subordinates:  Terri Thomas ("Thomas"), Cynthia Brinkman ("Brinkman"), Isabella Rideaux ("Rideaux"), and Renee Parker ("Parker").[16]  Each of these women detailed damaging accounts of Allen's abusive, uncivil treatment of subordinates and other employees.[17]  Among the complaints, Thomas stated that Allen was "mean spirited and employees were afraid of

---

[11] Document No. 75, ex. A, at 133:16-135:2 (Allen Depo.).

[12] Document No. 75, ex. U (Counseling Memo.).

[13] Document No. 75, ex. A, at 131:23-132:8.

[14] Document No. 75, ex. U at 2.

[15] Document No. 93, exs. 15, 16.

[16] Document No. 93, ex. 3 at 98:2-99:2.

[17] Document No. 75, ex. D ¶¶ 6-11 (Celestin Decl.); Document No. 75, ex. E at ROALLEN 001926-27.

her because of her vengeance."[18]  Brinkman reported that Allen was a "vicious woman with her mouth" and "the most horrible sales manager [she] had worked for in over 25 years."[19]  Rideaux commented that Allen "went around the office with a chip on her shoulder and fights with everyone from the morning show hosts to the building management guys."[20]  Parker stated that Allen was "mean and vengeful."[21]  After receiving these assessments, which all fell into the same pattern, and believing that the four women interviewed were credible, Celestin elected not to call additional employees.[22] She then presented her findings to Jackie Kindall, Vice President of Human Resources ("Kindall").[23]  Based on "the prior disciplinary action that had been taken, coupled with this investigation that Ms. Celestin did, and the strong accounts of the mistreatment . . . [showing that] Ms. Allen had not improved and was incapable of managing a staff," Kindall decided to terminate Allen.[24]

---

[18] Document No. 75, ex. E at ROALLEN XXX

[19] Document No. 75, ex. E at ROALLEN XXX

[20] Document No. 75, ex. E at ROALLEN XXX

[21] Document No. 75, ex. E at ROALLEN XXX

[22] Document No. 93, ex. 3 at 49: 1-12 (Celestin Depo.).

[23] Document No. 75, ex. D ¶ 11.

[24] Document No. 93, ex. 4 at 96:8-13 (Kindall Depo.).

On December 6, 2007, Abernethy wrote an email to Kindall: "Are we in agreement to terminate??"[25]   Kindall wrote back, "Yes . . . ."   Abernethy then suggested in the email exchanges a severance payment for Allen.   Kindall replied, "No, there will be no reason to provide her with one," to which Abernethy then replied, "Just a good ol' fashioned firing before the Holidays. Cool!"[26]   After receiving approval from Kindall, Abernethy called Allen into his office and terminated her.[27]

On December 10, 2007, Allen sent to Radio One a letter in which she demanded that the Company pay $45,000 in severance pay and $67,000 in transition pay, threatening to sue for breach of contract.[28]   Allen's attorney, Kenneth Sullivan, followed up with another letter two weeks later demanding payment and again threatening litigation.[29]   Neither letter mentioned nor complained of sex discrimination as a basis for Allen's dispute with Radio One.[30]   However, on June 2, 2008, almost seven months after she was terminated, Allen filed a charge of sex discrimination with the

---

[25] Document No. 93, ex. 17 at 2.

[26] Id. at 1.

[27] Document No. 75 at 7.

[28] Document No. 75, ex. A, at 212:11-214:2; see also Document No. 75, ex. J (Allen's letter to Abernethy).

[29] Document No. 75, ex. K (Sullivan Letter).

[30] Document No. 75, exs. J, K.

Equal Employment Opportunity Commission and the Texas Workforce Commission.[31]

About six months after her discharge, Allen began work as a sales manager for CBS, a Radio One competitor, until she was laid off about one year later.[32]  Thereafter, Allen started her own advertising agency, Radio Results Specialists, selling radio ad time to businesses.[33]  When she contacted Radio One to place an ad, Abernethy told her that he would not allow Radio One to do business with Radio Results Specialists because he had been "informed by [Radio One's in-house counsel] that we should not do business together due to this pending litigation that you have."[34]  When Allen asked for clarification, Abernethy said, "I mean this lawsuit that you have against us."[35]  At the time, Allen's discrimination charge remained pending in the EEOC, and she filed this suit after receiving her right-to-sue letter in late August 2009.  As a result of Radio One's refusal to deal directly with Allen, she was forced to use an intermediary advertising agency to place her ads, reducing her commission by one-third.[36]

---

[31] Document No. 75, ex. L.

[32] Document No. 75, ex. A at 238:2-239:24.

[33] Document No. 75, ex. A at 41:6-25.

[34] Document No. 93, ex. 1 ¶ 17.

[35] Id.

[36] Id. ¶18.

During the discovery process for this case, Allen produced papers that she had in her possession from her employment at Radio One.[37]   Radio One recognized the documents as confidential information, allegedly retained by Allen in violation of her employment agreement.[38]

Radio One filed a counterclaim for breach of contract, alleging that Allen breached her employment agreement by not returning the confidential information to Radio One when she was terminated and by retaining the information without Radio One's permission.[39]   Allen admitted in her deposition that she had retained the information after she was terminated.[40]   Radio One moves for affirmative partial summary judgment on its contract claim as to Allen's liability; Allen in turn moves for summary judgment on the contract claim, contending that Radio One has failed to show that it suffered any damages.

---

[37] Document No. 75, ex. A at 283:9-284:16.

[38] Document No. 75 at 24; Document No. 75, ex. Q ¶9 (Abernethy Decl.).

[39] Document No. 30 at 11.   Pursuant to the agreement, "Confidential Information" includes, among other things, "company proprietary information . . . including but not limited to . . . costs, customer lists, business studies, business procedures, finances and other business information . . . ." Document No. 93, ex. 26 (Employment Agreement).

[40] Document No. 75, ex. A at 283:9-284:16.

## II.  Summary Judgment Standard

Rule 56(a) provides that summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party must "demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for

the nonmovant, then summary judgment is proper.  <u>Kelley v. Price-Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  <u>Id.</u>  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  <u>Anderson</u>, 106 S. Ct. at 2513.

### III.  <u>Radio One's Motion for Summary Judgment</u>

#### A.  <u>Employment Discrimination</u>

Plaintiff alleges disparate treatment under both Title VII and the Texas Commission on Human Rights Act ("TCHRA"); both statutes require the same analysis.  <u>Ysleta Indep. Sch. Dist. v. Monarrez</u>, 177 S.W.3d 915, 917 (Tex. 2005) (stating that the TCHRA is intended to correlate with federal law in employment cases, so Texas courts look to federal law when applying it (citing <u>Wal-Mart Stores, Inc. v. Canchola</u>, 121 S.W.3d 735, 739 (Tex. 2003)).  Because Plaintiff lacks direct evidence of discrimination, her claims are analyzed under the burden-shifting framework from <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973).  Under this framework, Plaintiff must first create a presumption of unlawful discrimination by presenting evidence of a *prima facie* case.  After making this *prima facie* showing, the burden then shifts to the defendant-employer to

articulate a legitimate, non-discriminatory reason for the adverse employment action.  Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009).  To meet this burden, the employer must "clearly set forth, through the introduction of admissible evidence, the reasons" for its conduct.  Tex. Dept. of Comm. Affairs v. Burdine, 101 S. Ct. 1089, 1094 (1981).  If the employer can articulate such a reason, the inference of discrimination falls away, and the burden shifts back to the plaintiff to establish either (1) that the asserted excuse is a pretext for discrimination; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct with another motivating factor being the plaintiff's protected characteristic.  Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).  If the plaintiff can show that discrimination was a motivating factor, then the employer must show that "it would have taken the same action without the prohibited factor."  Smith v. Xerox Corp., 602 F.3d 320, 327 (5th Cir. 2010) (Reavley, J.).

1.   Failure to Promote

Radio One does not challenge Allen's prima facie case of discrimination and instead offers legitimate, non-discriminatory reasons for not promoting Allen.[41]  Radio One asserts that Allen's

---

[41] To establish a prima facie case of discriminatory failure to promote, Allen must show that: (1) she is a member of a protected class; (2) she sought and was qualified for an available position; (3) she was not selected for that position; and either

failure to promote allegations fail because (1) the sought-after position of Director of Sales did not exist when Allen worked for the company; and (2) Radio One eventually filled that position with an individual who was "objectively more qualified" for the position.[42]

Instead of challenging Radio One's assertion that Bob MacKay ("MacKay") was objectively more qualified than Allen for the position, Allen seeks to exclude Radio One's evidence of MacKay's qualifications.  Allen asserts that the Court should disregard MacKay's declaration and his resume because Radio One failed to disclose MacKay as a witness in its Rule 26 disclosures.  Pursuant to Federal Rule of Civil Procedure 37(c)(1), Allen argues that this evidence must be excluded.

Rule 37(c)(1) provides that a party who fails to disclose documents in accordance with Rule 26 "shall not, unless such failure is harmless, be permitted to use as evidence at a trial, a hearing, or on a motion any witness or information not so disclosed."  FED. R. CIV. P. 37(c)(1); *see also* <u>Tex. A&M Research Found. v. Magna Transp., Inc.</u>, 338 F.3d 394, 402 (5th Cir. 2003)

---

(4a) the employer awarded the position to someone outside the protected class, or (4b) after the employer rejected the plaintiff, the employer continued to seek applicants with plaintiff's qualifications.  *See* <u>Medina v. Ramsey Steel Co., Inc.</u>, 238 F.3d 674, 680-81 (5th Cir. 2001); <u>LaPierre v. Benson Nissan, Inc.</u>, 86 F.3d 444, 448 (5th Cir. 1996).

[42] Document No. 75 at 17-18.

(noting four factors in determining whether a violation of Rule 26 was harmless, including the importance of the evidence and the prejudice to the opposing party).  Notably, when Allen was asked about Bob MacKay in her deposition, she stated that she knew him and that he had been chosen for the Director of Sales position she had wanted.[43]  Also, in her amended complaint, Allen mentions that "after Allen was terminated, [Radio One] replaced her with a male manager, Bob MacKay."[44]  Allen therefore had notice, and could reasonably anticipate, that MacKay's qualifications would be at issue in this case.  Hence, she is not substantially prejudiced by the inclusion of his declaration and resume, which are relevant and probative.[45]  *See* Roper v. Exxon Corp., 198 F.3d 242, 1999 WL 824546, at *3 (5th Cir. Oct. 6, 1999) (unpublished op.) (allowing evidence that was not disclosed because the discovery material was available to plaintiff through other means); Kellogg Brown & Root Int'l, Inc. v. Altanmia Commercial Mktg. Co., No. H-07-2684, 2009 WL 514054, at *11 (S.D. Tex. Mar. 2, 2009) (Rosenthal, J.)

---

[43] Document No. 75, ex. A at 51:3-9.

[44] Document No. 11 at 2-3.

[45] Further, the January declarations of Kindall, Celestin, and Abernethy, which Allen complains were not promptly delivered to her, were provided in the materials for summary judgment filed on February 28, 2011.  Those three witnesses were named in the initial disclosures, so the prejudice to Allen is "negligible."  *See* Tex. A&M Research Found., 338 F.3d at 402.  Therefore, the Court will also consider exhibits C, D, P, and Q for this purposes of this motion.

(evidence not excluded because the identity of the witness had been previously disclosed in arbitration).

The evidence shows that Bob MacKay was qualified for the position of Director of Sales.  He graduated from Southern Illinois University with a Bachelor of Arts degree in Radio/Television, and has over 20 years of high level management experience in radio sales.[46]  Prior to becoming the Director of Sales for Radio One, MacKay had held a Vice President position at Emmis Communications, where he was responsible for national sales.[47]  Radio One has articulated a legitimate, non-discriminatory reason for promoting MacKay instead of Allen.  Because Allen does not counter Radio One's reason for promoting MacKay, she does not raise a fact issue that promoting MacKay was pretext.  Summary judgment on Allen's promotion claim is appropriate.

2.  <u>Termination</u>

Radio One does not challenge Allen's prima facie case for discrimination in termination but instead offers a legitimate, non-discriminatory reason for terminating Allen: she "engaged in a pattern of abusive behavior towards station employees and lacked the good judgment and discretion to continue as an employee of

---

[46] Document No. 75, ex. P ¶¶ 3-4 (MacKay Decl.).

[47] Document No. 75, ex. B at 232:4-15 (Abernethy Depo.).

Radio One."[48]  Allen does not contest that Radio One has articulated a legitimate, non-discriminatory reason for her termination. Therefore, the only issue on Allen's termination claim is whether Radio One's stated reason is pretext or if there is evidence in the record that Allen's sex was a motivating factor with respect to Radio One's treatment of Allen.  Rachid, 376 F.3d at 312.

### a.  Motivating Factor

Radio One argues that discrimination was not a motivating factor because Jackie Kindall, the ultimate decision-maker who terminated Allen, acted in good faith and not from discriminatory animus.  Allen relies on the Supreme Court's recent decision in Staub v. Proctor Hospital to oppose Radio One's argument, contending that Abernethy harbored bias against women and that he engineered Allen's termination.  131 S. Ct. 1186 (2011).

Vincent Staub, a member of the United States Army Reserve and a technician at Proctor Hospital, claimed that his employer terminated him in violation the Uniformed Services Employment and Reemployment Rights Act ("USERRA").[49]  Staub, 131 S. Ct. at 1190. Staub's immediate and second level supervisors, who had expressed

---

[48] Document No. 75 at 12; *see also* Document No. 75, ex. W at 75:11-19 (Kindall Depo.).

[49] 38 U.S.C. § 4311(c).  Like Title VII, USERRA provides that liability is established "if the person's membership . . . is a motivating factor in the employer's action."  Id.  "[USERRA] is very similar to Title VII."  Staub, 131 S. Ct. at 1191.

their disdain for Staub's military obligations on multiple
occasions, fabricated a complaint about his job performance.  Id.
at 1189. As a result of the complaint, the vice president of Human
Resources, who was unbiased, terminated Staub.  Id.  The Supreme
Court held that an employer--acting through an unbiased decision
maker--could still be held liable for discrimination if an
immediate supervisor performs an act motivated by proscribed
discriminatory animus that is intended to cause an adverse
employment action, and if that act is a proximate cause of the
ultimate employment action.  Id. at 1194.

Here, Allen contends that Abernethy intended to cause her
termination by reporting false complaints to Celestin, who filed a
report with Kindall, who terminated Allen.  Allen's reliance on
Staub is misplaced.  Unlike the supervisors in Staub, who were
proven to have acted with discriminatory animus based on their
hostility to Staub's Army Reserve obligations, and their consequent
adverse impact on the schedules of other hospital employees, there
is no evidence, direct or circumstantial, that Abernethy was
motivated by any discriminatory animus towards women or towards
Plaintiff herself because she is a woman.[50]  The summary judgment

---

[50] Allen's subjective belief that Abernethy was biased against
women is not enough to establish discrimination.  *See* Molnar v.
Ebasco Constructors, Inc., 986 F.2d 115, 119 (5th Cir. 1993).  Once
there is a legitimate, non-discriminatory reason for termination,
as here, the inference of discrimination created by Allen's prima
facie case falls away, and she must show some evidence that
discrimination was a motivating factor in her termination.  St.

evidence contains no proof that Allen herself, during her employment by Radio One, ever made any complaint to a supervisor or to Human Resources about any sex discrimination against her by Abernethy.  Even after her discharge Allen made no allegation of sex discrimination in either of the two demand letters that she sent to Radio One.  Therefore, even if Abernethy did intend to cause Allen to be fired by reporting the complaints about Allen to his supervisor, and even if those complaints were a proximate cause of her firing, Allen still has presented no evidence to raise a genuine issue of material fact that *sex discrimination* was a motivating factor for Abernethy's actions.  Because Allen does not allege that anyone other than Abernethy was biased towards women, and has failed to offer any evidence of his alleged bias, Allen does not meet her burden to show probative evidence at least sufficient to raise a genuine issue of fact that sex discrimination was a motivating factor in her discharge.

    b.   <u>Pretext</u>

Allen alternatively argues that the proffered reason for her discharge was pretext, asserting that: (1) Radio One treated a male employee, Joel Clary, more favorably than it treated her under similar circumstances; and (2) Radio One exhibited "mendacity" in its dealings with her.

---

<u>Mary's Honor Ctr. v. Hicks</u>, 113 S. Ct. 2742, 2749 (1993).

On the first contention, Allen must show that the differences in treatment occurred under similar circumstances.  *See* <u>Okoye v. Univ. of Tex. Houston Health Sci. Ctr.</u>, 245 F.3d 507, 514 (5th Cir. 2001) (an employee is similarly situated for purposes of Title VII if that employee was under "nearly identical" circumstances).

The Joel Clary incident arose when someone in late October, 2008, anonymously complained about him on Radio One's EthicsPoint internet hotline, accusing Clary, who was a sales manager, of mistreating his subordinates.[51]  Celestin conducted an investigation, in which she interviewed seven of Clary's subordinates to ascertain if there was any basis for the complaint.[52]  The results of her investigation were largely favorable to Clary; five of the subordinates "demonstrated great team spirit and reported positive work interactions with Mr. Clary."[53]  Two of his subordinates gave a mixed review, and "expressed some concerns."[54]  Celestin directed Abernethy to counsel Clary and give him a counseling memorandum, which Abernethy did on December 2, 2008.[55]  Clary vehemently denied ever mistreating any of his staff.[56]

---

[51] Document No. 90, ex. 28 at ROALLEN 009043 (filed under seal).

[52] Document No. 75, ex. D ¶14.

[53] <u>Id.</u>

[54] <u>Id.</u>

[55] <u>Id.</u>

[56] <u>Id.</u> ¶15.

18

Although Clary and Allen were both subjects of complaints about mistreatment of subordinates, the similarities end there. For example, one anonymous complaint was received about Clary, which prompted one investigation, after which he was issued a warning letter ("Counseling Memorandum"). Allen, on the other hand, was the subject of complaints in July 2007 and recurring complaints in November 2007. The first time, like Clary, she was issued a written warning. The second time, and then only after an independent investigation by Celestin, she was terminated. Further, when Celestin conducted her investigation of Clary, she found that Clary ran a positive team, with a few minor complaints. In contrast, every person that Celestin interviewed about Allen reported that she was abusive and uncivil. Also, Clary vehemently denied the accusations when he received a warning letter, but Allen did not deny mistreatment of other employees when she received her written warning. While Clary's single accuser left an anonymous general complaint on the company's complaint email hotline, Allen's complainants identified themselves and detailed her abuse and lack of civility. Moreover, Clary was not reprimanded for poor sales numbers, but Allen was cited for a decline in sales of 19 points under market. In short, the circumstances under which Clary received a written warning were not at all similar to the circumstances leading to Allen's termination.

19

As a second argument for pretext, Allen claims several instances of Radio One's "mendacity" concerning its treatment of her.[57] Allen relies on <u>Reeves v. Sanderson Plumbing Products, Inc.</u> to argue that, because there is some evidence of Radio One's untruthfulness in its dealings with her, Radio One's reason for terminating Allen is false and therefore was the product of unlawful discrimination. 120 S. Ct. 2097 (2000). In <u>Reeves</u>, plaintiff "made a substantial showing that [his employer's] explanation was false." <u>Id.</u> at 2107. Specifically, Reeves's employer had alleged shoddy record keeping, and Reeves presented evidence of properly maintained records. <u>Id.</u> In contrast, Allen does not dispute that she was uncivil or mistreated her colleagues or present any evidence that Kindall's declared reason for terminating her was false. <i>See</i> <u>id.</u> at 2109 ("employer would be

---

[57] The main instances Allen complains of are: (1) Radio One's EEOC position statement recounts that two employees told Abernethy that they were resigning because of Allen, while the same two women submitted statements claiming that they resigned because they wanted a job-sharing arrangement at work which Radio One could not provide; (2) Abernethy allegedly told Allen in July 2007 that no one's contract was going to be renewed, and then renewed MacKay's contract in December 2007; (3) Abernethy allegedly told Allen that there was no "Director of Sales" position, even though he had submitted paperwork for the creation of the position; (4) Abernethy stated in his deposition that he was unhappy with the timing of Allen's termination, but had sent an email on the day he terminated Allen that stated: "Wow! Just a good ol fashioned firing right before the Holidays. Cool!"; (5) Kindall stated in her deposition that she had to terminate Allen December 6, but had sent an email to Abernethy on December 6 stating "well, you don't have to fire her before the holidays. You could give her a final written warning that says 30 more days to shape up or she's out."

entitled to judgment as a matter of law if the record conclusively revealed some other, non-discriminatory reason for the employer's decision"). Allen fails to raise a fact issue that the proffered reason for her discharge was false, or that any of the inconsistencies in events at Radio One were motivated by sex discrimination. Therefore, summary judgment is appropriate on her termination claim.

B.   Retaliation

The summary judgment proof includes evidence that following Allen's termination, after Allen filed an EEOC complaint of sex discrimination against Radio One, which was still pending, Radio One refused to accept radio advertising directly from Allen, because of "this lawsuit that you have against us," which forced Allen to use an intermediary to place her ads with Radio One, thereby reducing her commissions by one-third. Viewing the evidence in the light most favorable to Allen and taking the record evidence and all reasonable inferences in her favor, genuine issues of material fact on Allen's retaliation claim preclude summary judgment for Radio One on Allen's retaliation claim. *See* Robinson v. Shell Oil Co., 117 S. Ct. 843, 845-847 (1997); Carter v. TCI Media Servs., No. 3:97-CV-1996-R, 1998 WL 686777, at *7 (N.D. Tex. Sept. 29, 1998).

IV.   <u>Breach of Contract Claim</u>

Under Texas law,[58] "[t]he essential elements of a breach of contract claim are:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." <u>Aguiar v. Segal</u>, 167 S.W.3d 443, 450 (Tex. App.--Houston [14th Dist.] 2005, pet. denied); *accord* <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 288 (5th Cir. 2004).

Radio One moves for partial affirmative summary judgment on its contract claim, asserting that it has proven that Allen breached the contract.  Allen has also moved for summary judgment on the contract claim, contending that Radio One has not proved that (1) she breached the contract; or (2) that Radio One has suffered any damages.  The parties do not dispute the contract's validity or Radio One's performance.

A.   <u>Breach of Contract</u>

The Employment Agreement which Allen signed provides:

---

[58] The Employment Agreement signed by the parties states that Texas law will govern disputes.  *See* Document No. 86, ex. B at ROALLEN 001534 (Employment Agreement, clause 19(d)).

11.   <u>Confidential Information.</u>

      11.1.   "Confidential Information" is information however delivered, disclosed or discovered during the Term of this Agreement, that Employee has, or in the exercise of ordinary prudence should have, reason to believe is confidential or that Company designates as confidential, including but not limited to [list of items].[59]

      11.6.   Employee agrees to return all Confidential Information, including all copies and versions of such Confidential Information (including but not limited to information maintained on paper, disk, CD-ROM, network server, or any other retention device whatsoever) and other property of Company, to Company immediately upon Employee's separation from Company (regardless of the reason for the separation).[60]

"Term" is defined in the contract as a period of one year beginning Sept 23, 2006 and ending Sept 22, 2007.[61] Allen contends that she did not breach the contract because Radio One cannot prove

---

[59] *See* Document No. 86, ex. B at ROALLEN 001529 (Employment Agreement, clause 11.1). Per the agreement, "Confidential Information" includes "company proprietary information, technical data, trade secrets or know-how, including but not limited to: research, processes, pricing strategies, communication strategies, sales strategies, sales literature, sales contracts, product plans, products, inventions, methods, services, computer codes or instructions, software and software documentation, equipment, costs, customer lists, business studies, business procedures, finances and other business information . . . ." *See* <u>id.</u>

[60] *See* Document No. 86, ex. B at ROALLEN 001530 (Employment Agreement, clause 11.6).

[61] *See* Document No. 86, ex. B at ROALLEN 001524 (Employment Agreement, clause 2).

that "confidential information" was delivered, disclosed, or discovered to Allen during the contract term, which ended on September 22, 2007.[62]   Allen contends that Radio One must show that the confidential information that Allen allegedly retained was delivered, disclosed, or discharged to her between September 23, 2006 and September 22, 2007.   Included among the documents retained by Allen are seven pages numbered CA 00257-60 and CA 00279-281 which were printed on September 17, 2007, five days before Allen's contract expired.   These are Top Advertiser sheets listing all of the advertisers and the 2006 revenues generated from each, the very kind of business information that is described as "confidential."   Allen contends that Radio One cannot prove that she received the documents before the expiration of her term, and therefore cannot prove that she breached the contract.

The Court finds no merit in Allen's argument.   Allen admitted in her deposition that she had kept the documents in her possession past her termination date.   There is no controverting evidence to refute this proof that the confidential information was disclosed to Allen and was in her possession before her contract period ended.   Therefore, Allen breached the terms of her contract with Radio One when she retained confidential information after her termination in violation of clause 11.6 of her contract.

B.   <u>Damages</u>

---

[62] <u>Id.</u>

In her cross-motion for summary judgment, Allen contends that Radio One cannot prevail on its contract claim because it cannot prove economic damages. In Texas, damages are an essential element of a contract claim. Lexxus Int'l, Inc. v. Loghry, 512 F. Supp. 2d 647, 666 (N.D. Tex. 2007). However, "[s]pecific performance . . . is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate." Stafford v. S. Vanity Magazine, Inc., 231 S.W.3d 530, 535 (Tex. App.--Dallas 2007, pet. denied) (citing Scott v. Sebree, 986 S.W.2d 364, 368 (Tex. App.-- Austin 1999, pet. denied)).

Radio One seeks equitable relief pursuant to its contract. In Radio One's counterclaim, it prays for "such other relief, equitable or legal, that this Court may deem just and proper under the circumstances."[63] Specifically, Radio One asks for (1) all copies of confidential information that is in Allen's custody to be returned; (2) an injunction that Allen not delete any of the documents in her possession; and (3) a sworn accounting by Allen regarding her treatment of and accounting for Radio One's confidential documents in her possession.[64]

The summary judgment evidence is also uncontroverted that Allen signed a contract in which the parties acknowledged that "failure to return confidential information will cause [Radio One]

---

[63] Document No. 30 at 14.

[64] Document No. 85 at 4.

25

substantial and irrevocable harm, and therefore, in the event of any such breach, in addition to any such remedies that may be available to [Radio One], [Radio One] shall be entitled to equitable relief, including specific performance and injunctive relief." When Allen signed the contract, she agreed that Radio One was entitled to injunctive relief in the event that she violated its terms.  Radio One has established that Allen breached the contract and is entitled to equitable relief, and therefore is entitled to summary judgment on its contract claim for liability. The nature and extent of the equitable relief and any other remedies will be determined after trial.

## V.  Order

Based on the foregoing, it is hereby

ORDERED that Defendant Radio One of Texas II, LLC's Motion for Summary Judgment (Document No. 75) is GRANTED with respect to Allen's sex discrimination claims, and Allen's sex discrimination claims are DISMISSED on the merits; and the motion is otherwise DENIED as to Allen's retaliation claim.  It is further

ORDERED that Defendant Radio One of Texas II, LLC's Affirmative Motion for Partial Summary Judgment on its Counterclaim for Breach of Contract (Document No. 77) is GRANTED, Plaintiff Corina T. Allen's Motion for Summary Judgment Regarding Defendant's Counterclaim (Document No. 79) is DENIED, and Corina T. Allen is

adjudged liable to Radio One of Texas II, LLC for breach of her Employment Agreement with Radio One for the year September 23, 2006 to September 22, 2007.  Remaining for trial are Allen's retaliation claim and, following trial, determination of the equitable remedies to which Radio One is entitled by reason of Allen's breach of her employment contract.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas, on this 20th day of April, 2011.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE