IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CORINA T. ALLEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-4088 |
| | § | |
| | § | |
| RADIO ONE OF TEXAS II, LLC, | § | |
| | § | |
| Defendant. | § | |

ORDER DENYING MOTIONS FOR JUDGMENT
AS A MATTER OF LAW AND FOR NEW TRIAL

After a three day trial, the Jury on May 19, 2011, returned a Verdict in favor of Plaintiff Corina T. Allen ("Allen") on all controlling questions regarding Allen's Title VII retaliation claim; and the Court, having subsequently received and considered additional evidence and arguments of the parties on June 7, 2011, regarding the equitable relief sought by the parties, rendered on June 9, 2011 its Order on Equitable Relief and Other Post-Trial Issues (Document No. 139). Final Judgment was entered on June 9, 2011. Now pending are Defendant Radio One of Texas II, LLC's Renewed Motion for Judgment as a Matter of Law, and, in the alternative, Motion for New Trial and/or Remittitur (Document No. 153), and Plaintiff Corina T. Allen's Motion for New Trial Regarding Gender Discrimination Claims (Document No. 154).

## Legal Standards

A motion for judgment as a matter of law should be granted if there is no "legally sufficient evidentiary basis for a reasonable jury to find for a party." Pineda v. United Parcel Service, Inc., 360 F.3d 483, 486 (5th Cir. 2004) (citing FED. R. CIV. P. 50(a)). "A court should grant a post-judgment motion for judgment as a matter of law only when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." Allstate Ins. Co. v. Receivable Fin. Co., L.L.C., 501 F.3d 398, 405 (5th Cir. 2007) (internal quotations omitted). When evaluating the sufficiency of the evidence, the Court views all evidence and draws all inferences in the light most favorable to the verdict. Id.

"A party is entitled to a new trial when the jury verdict is against the great weight of the evidence." Deloach v. Delchamps, Inc., 897 F.2d 815, 820 (5th Cir. 1990). When a jury verdict results from passion or prejudice, a new trial, not remittitur, is the proper remedy; damage awards that are merely excessive, however, are subject to remittitur. Wells v. Dallas Indep. Sch. Dist., 793 F.2d 679, 683-84 (5th Cir. 1982). A denial of a motion for new trial is subject review only for abuse of discretion. King v. Exxon Co., U.S.A., 618 F.2d 1111, 1115 (5th Cir. 1980).

Radio One's Motions
===

Radio One seeks judgment as a matter of law, raising several points that are considered below:

1.   Contrary to Radio One's argument, there was legally sufficient evidence to support the Jury's rejection of Radio One's proferred non-retaliatory reason for refusing to accept advertising from Plaintiff and finding that Radio One's motivating reason for refusing the advertising was because she had filed an EEOC charge against the company.  Allen presented substantial evidence of retaliation, including evidence that Radio One's Vice President and General Manager of its Houston office told Plaintiff that his company would not do business with Allen because of her litigation against it.[1]  The Jury heard Abernethy's voice on a recorded telephone call telling Allen that Radio One's counsel (referring to its associate general counsel Sundria Ridgley at Defendant's corporate offices in Maryland), had told him not to do business with Allen because of Allen's pending litigation against Radio One.[2]  The only action that Allen had against Radio One was her Title VII claim pending in the E.E.O.C., and Ridgley herself had signed Radio One's response to Allen's EEOC claim.  In addition to other evidence of retaliation, the audiotape itself is ample

---

[1] *See* Document No. 147 at 51-52 (Abernethy Tr.).

[2] *See* id. at 31.

evidence from which a rational jury could conclude that Radio One retaliated against Allen for commencing a Title VII action against it.

2.   Allen may recover damages for the harm that Radio One committed, because she is a "person[] aggrieved": the retaliation was directed at Allen, not her company.  42 U.S.C. §2000e-5(f)(1); *see also* Thompson v. N. Am. Stainless, LP, 131 S. Ct. 863, 870 (2011) ("[T]he term 'aggrieved' in Title VII incorporates [the zone of interests] test, enabling suit by any plaintiff with an interest 'arguably [sought] to be protected by the statutes,' while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII." (internal quotations omitted)).

Radio One relies on Bellows v. Amoco Oil Co., 118 F.3d 268, 276 (5th Cir. 1997) and Searcy v. Houston Lighting & Power Co., 907 F.2d 562 (5th Cir. 1990), *cert. denied*, 111 S. Ct. 438 (1990), to argue that Allen's injury was to her company and not to her, and therefore she has no standing to sue.  However, in those actions, the companies' principals had no individual claim against the defendants.  In contrast, here it was Allen individually, not her company, who filed the EEOC charge alleging unlawful discrimination by Radio One when it fired her, and the evidence was quite sufficient for the jury to find that Radio One's retaliation was

directed at Allen personally.[3]  *See* Thompson, 131 S. Ct. at 870 (holding that "hurting [plaintiff] was the unlawful act by which the employer punished [plaintiff's fiancee]" and thus plaintiff was in the "zone of interests" of those affected by defendant's retaliation).  Besides, the retaliation began before Allen ever formed her wholly owned S corporation.  There is no merit in Radio One's contention that Allen lacked standing under Title VII.

    3.  There is sufficient evidence to support the Jury's finding that Allen sustained emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life, for which the Jury awarded damages in the amount of $10,000.  Allen testified that Radio One's retaliation against her lengthened her work days and caused her continuing anxiety, sleeplessness, loss of appetite, and weight loss.[4]  Allen further testified that the retaliation caused a disruption in her social life, interference with friendships, and ongoing depression.[5]  Unlike Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927 (5th Cir. 1996), where the plaintiff testified only that he felt "frustrated," "hurt," "angry," and "paranoid," without any physical injury being claimed, Allen testified to physical harm sustained as a result of the

---

[3] *See* Document No. 146 at 142:4-16.

[4] *See* Document No. 146 at 52:23-53:2, 53:4-17, 70:17-71:12.

[5] *See* id. at 71:18-72:11.

emotional distress caused by Radio One's retaliation. *See* Forsyth v. City of Dallas, Texas, 91 F.3d 769, 774 (5th Cir. 1996); E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 402 (5th Cir. 2007) (quoting Vadie v. Miss. State Univ., 218 F.3d 365, 376 (5th Cir. 2000)).

    4.   There is ample evidence to support the Jury's findings of damages. "[T]he size of the award [for pain and suffering] is within the province of the jury, so long as the award is not impermissibly affected by 'passion or prejudice.'" Schexnayder v. Bonfiglio, 167 F. App'x 364, 366 (5th Cir. 2006) (unpublished op.) (citing Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 660-61 (5th Cir. 2002)). In light of the quantum of proof offered by Allen and described above, an award of only $10,000 for her emotional pain and suffering was within the province of the Jury, not a product of passion or prejudice.

    The Jury's finding of $6,617.45 for Plaintiff's loss of income is also supported in the evidence. Radio One challenges only $2,363.50 of that total award, contending Allen did not prove lost opportunity damages in that amount. The dispute centers on Radio One's refusal to do business with Allen on a "club remote" package. The Court finds there was sufficient evidence for a jury to conclude that because Radio One refused to communicate directly with Allen, she lost $2,363.50 on the club remote package.[6]

---

[6] *See* Document No. 146 at 66:1-69:3.

There is also legally sufficient evidence to support an award of punitive damages against Radio One. Indeed, there was evidence that it acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Allen presented direct evidence that Radio One "discriminate[d] in the face of a perceived risk that its actions will violate federal law." *See* Smith v. Xerox Corp., 602 F.3d 320, 336 (5th Cir. 2010). That proof included the fact that Radio One was well aware of its obligation not to retaliate; the company's Vice President for Human Resources, Jacqueline Kindall, testified to such. Abernethy, the company's Vice President and General Manager in Houston, testified that he too was aware of the prohibition on retaliating against an employee who makes a Title VII claim. Nonetheless, Abernethy told Allen in the tape-recorded telephone call that he had sought advice from Radio One's associate general counsel, Sundria Ridgley, who instructed Abernethy not to do business with Allen due to Allen's litigation against Radio One. It was Ridgley who had signed the response Radio One had filed in the E.E.O.C. to Allen's Title VII discrimination claim. The Jury could well infer from this tape-recorded phone call, in which Abernethy implicated Radio One's associate general counsel, that the retaliation was known and directed from the highest levels of the company and that Radio One retaliated "in the face of a perceived risk that its actions will violate federal law." Xerox,

7

602 F.3d at 335. Moreover, when asked by the Court during voir dire examination of the jury panel to introduce those at Defendant's counsel table, Radio One's lead counsel introduced Ridgley as "an in-house counsel with Radio One." Allen during her testimony also identified Ridgley in the courtroom at Radio One's counsel table. Radio One, however, never called Ridgley to testify to deny that she had given to Abernethy the instructions that Abernethy related to Allen in their tape-recorded phone call. Without even considering the nuances of the uncalled witness rule and whether it might have applied, one must expect that the Jury observed what was patently obvious, namely, that Radio One rested its defense with Radio One's accused ultimate decision-maker--to whom the retaliation was specifically attributed--still sitting in the courtroom at Defendant's table without providing a word of testimony in her own or her company's defense.[7] There was ample evidence from which a rational jury could find that Radio One's

---

[7] Radio One evidently chose to rely on Abernethy's trial testimony that he was not truthful to Allen in the phone call when he attributed to Ridgley those retaliation instructions. Once a witness sets about impeaching himself, of course, his entire credibility is seriously undermined. All the more so here, given that Allen--who had worked with Abernethy not only at Radio One but also previously at Cox Radio--testified that she tape recorded her phone call to Abernethy because she "thought he would lie about the conversation later." Given the tangled web that Abernethy had spun and the Jury's duty to judge the credibility of witnesses and the weight to be given their testimony, the Jury may have thought it all the more damning that Ridgley herself sat mute.

managers and supervisors possessed the requisite subjective intent to retaliate and willfully did so, knowing that such actions were unlawful.

The Court also finds no merit in Defendant's contention that the punitive damage award should be reduced below the statutory cap to prevent a due process violation. In a Title VII case, the Fifth Circuit has affirmed punitive damage awards up to the statutory cap, even when no other damages were awarded by a jury. *See* Abner v. Kansas City S. Ry. Co., 513 F.3d 154, 163 (5th Cir. 2008) (affirming punitive damages award of $125,000 per plaintiff where there were no compensatory damages in Title VII case and holding that "preventing juries from awarding punitive damages when an employer engaged in reprehensible discrimination without inflicting easily quantifiable physical and monetary harm would quell the deterrence that Congress intended in the most egregious discrimination cases under Title VII"); *see also* Cush-Crawford v. Adchem Corp., 271 F.3d 352, 359 (2d Cir. 2001) ("In Title VII cases, however, the statutory maxima capping punitive damage awards strongly undermine the concerns that underlie the reluctance to award punitive damages without proof of actual harm.").

In assessing whether the amount of the award is reasonable "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's

9

conduct." BMW of N. Am., Inc. v. Gore, 116 S. Ct. 1589, 1599 (1996). Factors which a court considers in determining the degree of reprehensibility in a defendant's conduct are "whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." State Farm Mut. Auto Ins. Co. v. Campbell, 123 S. Ct. 1513, 1521 (2003). Here, the retaliation was especially brazen, with Abernethy directly informing Allen that Radio One would not do business with her because of her pending litigation, and that he was acting on the instructions of the company's associate general counsel. Additionally, there was evidence that Radio One's retaliation against Allen not only was deliberate but also was prolonged, lasting over two years, and that it continued *even as the trial was ongoing*. In sum, there is ample evidence from which the Jury could find that Radio One's conduct was reprehensible. The evidence fully supported an award of punitive damages.

The Court reduced the Jury's award of $750,000 in punitive damages to $290,000, to conform to the statutory cap. The Court finds that a punitive damages award of $290,000 is not excessive

10

under the facts of this case viewed in the light most favorable to the verdict, and a further remittitur is not required.

5.   The Court has carefully considered all of Radio One's additional arguments in support of its alternative motion for a new trial and finds that they are without merit.  The Jury Verdict is not against the great weight of the evidence.  Moreover, in a previous Order the Court both ruled that Radio One waived any right to recover attorney's fees on its contract claim and also carefully crafted the scope of equitable relief awarded to Plaintiff.  The Court finds no need to revisit those issues here.

## Allen's Motion for New Trial

Allen moves for a new trial regarding her gender discrimination claims, reurging many of the arguments that the Court considered, and rejected.  After further careful review, the Court finds its prior ruling should not be set aside.

## Order

Based on the foregoing, it is hereby

ORDERED that Defendant Radio One of Texas II, LLC's Renewed Motion for Judgment as a Matter of Law, and, in the alternative,

Motion for New Trial and/or Remittitur (Document No. 153) and Plaintiff Corina T. Allen's Motion for New Trial Regarding Gender Discrimination Claims (Document No. 154) are in all things DENIED.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas, on this 28th day of October, 2011.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE